MARGARET POLIZZANO AND NICHOLAS POLIZZANO, HER HUSBAND, PLAINTIFF-RESPONDENTS, v. MAPES HOLDING COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued May 7, 1935—Decided August 7, 1935.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the appellant, *Joseph C. Paul.*

For the respondents, *Sidney Finkel* (*A. Howard Finkle*, of counsel).

The opinion of the court was delivered by

TRENCHARD, J.   The defendant below appeals from a judgment of the District Court rendered by the judge, sitting without a jury, in favor of the plaintiffs.

The agreed state of the case discloses the following matters of fact:

The plaintiff Margaret Polizzano was a tenant in the defendant's sixteen-family apartment house, occupying an apartment on the ground floor in which the windows at the rear were close to the ground.   At the rear of the building where such windows opened, there was a yard, enclosed by

a fence, and which yard was reserved by the defendant for the common use of the tenants, and which the tenants and their children used. In September, 1933, desiring to clean her windows, it became necessary for the plaintiff to remove shrubbery and weeds which were growing at or near the windows. This she did with her hands, not knowing that the weeds were poison ivy. As a result, she became infected from the poison ivy, which spread over her body, causing her to be confined in bed for three weeks. She suffered from the infection, received the attention of a physician and required medicines. She recovered $225 damages, and the plaintiff Nicholas Polizzano, her husband, recovered $50 on account of medical expenses consequently paid by him.

The state of the case further shows that another tenant in the apartment house testified that in June, 1933, she informed Mrs. Stokes, the superintendent of the premises (who was admittedly defendant's agent), that there was poison ivy in the yard and that thereafter it was clipped with a pair of shears but it grew up again. It further shows that the superintendent admitted at the trial that in June, 1933, she was told by one of the tenants of the existence of the poison ivy in the yard; that the superintendent informed the defendant and was supplied with a pair of shears and clipped the poison ivy, but that she had made no other or further effort or attempt to cut it or root it out.

At the conclusion of the trial the defendant moved for judgment (which motion was denied), and now argues that it, the defendant, owed to plaintiff no duty to use reasonable care and skill to make its premises reasonably fit and safe for the use intended.

On the other hand the plaintiff contends that the defendant was charged with the duty to use reasonable care to keep that part of the yard of the premises which it reserved and retained in its possession for the use in common of its different tenants, in a safe condition and free from any nuisance or danger that might result in injury to the plaintiff; and that the defendant failed to do. We think this latter contention sound.

In 16 *R. C. L.* 1037 it is said: "It is generally held that where he [the landlord] retains possession of a portion of leased premises for use in common by different tenants, a duty is by law imposed upon him to use ordinary care to keep in safe condition this particular part of the leased premises, and if he is negligent in this regard, and a personal injury results to a tenant by reason thereof, he is liable therefor."

Our courts have consistently followed this rule in a long line of reported cases.

Thus in *Gilloon* v. *Reilly,* 50 *N. J. L.* 26, Mr. Justice Dixon, referring to the owner's liability, said: "The obligation resting upon such an owner is that reasonable care and skill have been exercised to render the premises reasonably fit for the uses which he has invited others to make of them."

Again in *Siggins* v. *McGill,* 72 *N. J. L.* 263, Mr. Justice Pitney, speaking for the Court of Errors and Appeals, after stating the general rule that a landlord is not liable for injury sustained by a tenant by reason of the ruinous condition of demised premises, said: "But it is recognized that this rule does not apply to those portions of his property [such as passageways, stairways, and the like] that are not demised to the tenant, but are retained in the possession or control of the landlord for the common use of the tenants and those having lawful occasion to visit them, the ways being used as appurtenant to the premises demised. With respect to such ways, it has been held by our Supreme Court that the landlord is under the responsibility of a general owner of real estate who holds out an invitation to others to enter upon and use his property, and is bound to see that reasonable care is exercised to have the passageways and stairways reasonably fit and safe for the uses which he has invited others to make of them. * * * This doctrine, we think, is indubtiably sound."

The Court of Errors and Appeals again applied that doctrine in *Perry* v. *Levy,* 87 *N. J. L.* 670, where a tenant sustained injury caused by a leaking roof after the landlord had been notified of the condition and failed to use reasonable

means of eliminating the nuisance. There it was said: "The trial court properly applied the principle laid down by this court in the case of *Siggins* v. *McGill*, 72 *N. J. L.* 263; 62 *Atl. Rep.* 411; 36 *L. R. A.* (*N. S.*) 316; 111 *Am. St. Rep.* 666, to the case under discussion. The Supreme Judicial Court of Massachusetts, in the case of *Gilland* v. *Maynes*, 216 *Mass.* 581; 104 *N. E. Rep.* 555, held that the landlord having retained control of the outside of a building, including the roof and gutters, upon him rested the responsibility, as to repairs, where he had let different parts of the building to different tenants."

In the present case no question of assumption of risk or of contributory negligence upon the part of the plaintiff is raised. The sole question presented for examination and determination is: Was it open to the trial judge, sitting without a jury, to find that the defendant had failed to exercise the reasonable care owed to plaintiff in the circumstances of the present case as disclosed by the evidence?

We think that it was. The evidence showed, as we have pointed out, that the defendant, in the month of June, had ample notice of the existence of poison ivy in that part of the yard which the defendant had reserved for use in common by the plaintiff and other tenants. It therefore became its duty to use appropriate means to keep that part of the yard clear of the poisonous weed. This the defendant assumed to do. It was clipped on one occasion only, and that was in the month of June. The defendant gave it no further attention, and the poison ivy grew up and the plaintiff was infected in September following by coming in contact with it. It was incumbent on the defendant to use reasonable care to clip the poison ivy as often as it grew to be a danger, or to take other means available to root it out and prevent its growth. It was therefore open to the trial judge to find that the defendant failed in its duty to use reasonable care to keep the premises free from this danger.

The defendant argues that it did not know that the weed was dangerous or poisonous.

The answer to this is that it was told that it was *poison*

ivy and assumed to eradicate it as dangerous, but was negligent in that undertaking.

The defendant also argues that the court could not take judicial notice that poison ivy is dangerous or poisonous. We think it could.

Courts may judicially notice the peculiar properties of plant life in so far as they may be generally known, and may take judicial notice that poison ivy is dangerous and poisonous. 15 *R. C. L.* 1103, and 23 *C. J.* 156, 157, and cases there cited.

Lastly it is argued that "the defendant had no control over the growing of the poison ivy."

Not so. As a matter of fact the place where it grew was under the control of the defendant, who assumed to control its growth or to eradicate it and negligently failed in that undertaking. The injury resulting to the plaintiff was not due solely to natural causes, but on the contrary the defendant's negligent acts contributed to the nuisance which caused the plaintiff's injury. A person whose negligent acts have contributed to a nuisance may be liable, although natural causes may have contributed. 46 *C. J.* 655, and cases cited.

The foregoing observations in effect dispose of every question presented and argued.

The judgment will be affirmed, with costs.